**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| Kara Haynes, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Advance Auto Parts, Incorporated,<br><br>Defendant. | **Civil Action No.:**<br><br>**COMPLAINT – COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kara Haynes, by and through her attorneys, on behalf of herself and others similarly situated, based on personal knowledge with respect to her own circumstances and based upon information and belief pursuant to the investigation of counsel as to all other allegations, alleges the following:

## I. INTRODUCTION

1. "Despite the health benefits of breastfeeding for both mothers and infants, too many nursing employees face obstacles to pumping breast milk in the workplace, making it difficult to continue breastfeeding while employed. Break time and a private space to express breast milk are critical [] supports for breastfeeding employees."[1] The House of Representatives reached these conclusions in 2021 after more than a decade of considering the plight of working mothers around the country. Since 2010, the Fair Labor Standards Act of 1938 ("FLSA") has required employers

[1] H.R. Rep. 117-102, at 3 (2021), *available at* https://www.congress.gov/117/crpt/hrpt102/CRPT-117hrpt102.pdf.

to provide nursing accommodations, but "[g]aps in the law limit access to [its] protections and le[ft] employees unable to recover in court when their employers fail to comply with the law's requirements."[2] Therefore, on December 29, 2022, Congress passed and the President signed the Providing Urgent Maternal Protections for Nursing Mothers Act (the "PUMP Act") to extend the FLSA protections "to more employees and ensure employees can recover appropriate forms of relief in court when employers violate the law."[3]

2. Despite already being required to comply with the FLSA breastfeeding requirements for more than a decade, after the PUMP Act came into effect, Advance Auto Parts, Incorporated ("Advance Auto" or the "Company") failed and continues to fail to provide proper accommodations to its nursing employees for minimum appropriate break times and space to express breast milk in private. Employees are forced to pump breast milk in unsanitary stock rooms, bathrooms, or their private vehicles because Advance Auto fails to provide its employees with a "reasonable break time for an employee to express breast milk" and fails to provide a "place…that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," all of which is mandated by the PUMP Act. Advance Auto's failure to provide sufficient lactation accommodations is a systemic issue that has impacted employees at locations throughout the country.

3. Given this nationwide issue, Plaintiff brings this collective action lawsuit against Advance Auto for violating the FLSA as amended by the PUMP Act, 29 U.S.C. § 218d(a)(1) and (2).

[2] *Id.*

[3] *Id.*

4. It has long been known that breastfeeding is crucial for a newborn baby and has numerous benefits for the mother and the child. The American Academy of Pediatrics recommends breastfeeding exclusively for at least the first six months after birth and, ideally, until or after the child is twelve months of age.[4] Breast milk is an organic superfood that provides the essential nutrients and antibodies required for a baby's healthy growth and development. It can reduce the risk of various illnesses and infections and can strengthen the emotional and psychological development of the infant. Breastfeeding also has mental and physical benefits for the mother and for society at large.

5. Not providing supportive accommodations for nursing mothers can have a negative impact on their physical, mental, and emotional health. Mothers who are unable to pump breast milk can experience engorgement, which can be painful and lead to infection. They also produce less milk for their babies. Not having sufficient time or space to pump can also result in increased feelings of stress, anxiety, and guilt for not being able to provide their babies with the best possible nutrition. Studies show that mothers who did not have access to a private place to pump breast milk were less likely to continue breastfeeding and achieve their breastfeeding goals, which increases their risk of mental health conditions like anxiety, postpartum depression, and stress.

6. Despite the overwhelming consensus about the benefits of breastfeeding, discrimination against breastfeeding workers remains a widespread issue. A report released by the

---

[4] Along with the World Health Organization, the U.S. Surgeon General's Office, and the American Academy of Family Physicians. *See* the Office of Personnel Management, *Guide for Establishing a Federal Nursing Mother's Program* (January 2013), at 2. Available at: https://www.opm.gov/policy-data-oversight/worklife/news/2013/1/opm-publishes-new-guide-for-establishing-a-federal-nursing-mother-s-program/ (last accessed October 12, 2023).

University of California in 2016 found that "three out of every five mothers work for employers who do not provide reasonable break time and private space for pumping breast milk."[5]

7. To ensure that employers provide reasonable break times and a private, non-bathroom space for breastfeeding employees to pump at work, Congress passed the Break Time for Nursing Mothers law (the "Pumping at Work Act") in 2010, which amended the FLSA to require such accommodations for individuals who needed to express breast milk while on the job. Unfortunately, the Pumping at Work Act, § 207(r) of the FLSA covered only non-exempt employees and had such a weak enforcement mechanism that it rendered the law "virtually useless in almost all practical application."[6] The 2022 PUMP Act corrected this defect by providing additional forms of relief for those harmed by their employer's failure to provide adequate time and space for nursing parents to pump. *See* 29 U.S.C. §§ 216(b) and 218d.

8. Plaintiff Kara Haynes is an employee of Advance Auto located at 381 Donald E. Thurmond Parkway in Cleveland, Georgia (Store No. 7119). She commenced her employment at Advance Auto in November 2021 and gave birth to her child in April 2023. When she returned to work, she repeatedly requested a private space to pump milk. Advance Auto refused to provide one for her. She was forced to go to the bathroom and don a wearable pump so she could pump while she worked. Advance Auto failed to provide her with a secure, private space to pump and

[5] Morris, L., Lee J., Williams, J. C., *Exposed: Discrimination Against Breastfeeding Workers*, Center for WorkLife Law, University of California, Hasting College of the Law, Research Paper No. 328 (January 1, 2019), available at: https://worklifelaw.org/publication/breastfeeding-report/ (last accessed October 13, 2023), citing Katy B. Kozhimannil et al., *Access to Workplace Accommodations to Support Breastfeeding after Passage of the Affordable Care Act*, 26 Women's Health Issues, 6 (2016).

[6] *Hicks v. City of Tuscaloosa*, No. 13-cv-02063, 2015 U.S. Dist. LEXIS 141649, at *99 (N.D. Ala. Oct. 19, 2015).

with reasonable breaks to pump. In this way, Advance Auto deprived her of her rights as a nursing mother guaranteed by the PUMP Act to a clean and secure space to pump milk for her infant child.

9. As a result of her experience, Ms. Haynes experienced a reduction in her milk supply. The reduction in milk supply for her new baby, along with the lack of accommodations provided by Advance Auto, has caused Ms. Haynes to endure anxiety, humiliation, and emotional distress.

10. It would be relatively easy for Advance Auto to comply with the PUMP Act. For example, there are numerous prefabricated, temporary spaces that are commercially available for installation. These temporary spaces are easy to set up, affordable, and would satisfy Advance Auto's obligations under the PUMP Act. Examples of the spaces are those sold by Mamava,[7] Brighter Booth[8], and DayOne Baby[9], among many others. Images from those companies' web sites show how such spaces could have been integrated into Advance Auto's space:





[7] https://www.mamava.com (last accessed October 12, 2023).

[8] https://brighterbooth.com (last accessed October 12, 2023).

[9] https://www.dayonebaby.com (last accessed October 12, 2023).

11. Likewise, other companies are working to accommodate breastfeeding mothers with different easy to implement options, such as dedicating a room to breastfeeding in a public stadium[10] or permitting employees to use restaurant managers' locked offices to express milk.[11] Thus, while there are many ways to accommodate breastfeeding employees, Advance Auto simply decided to not provide such accommodations, despite repeated requests.

12. Advance Auto's failure to comply with the PUMP Act has had a significant impact on Ms. Haynes and other breastfeeding Advance Auto employees. Instead of supporting breastfeeding mothers, Advance Auto's practices forced those mothers into a Hobson's choice between using demeaning, unsanitary spaces to express milk, abandoning pumping at work altogether, or quitting their jobs. Congress clearly declared in the PUMP Act that no mother should have to make such a choice.

13. Plaintiff seeks redress for Advance Auto's violations of the PUMP Act. Plaintiff asserts two causes of action against Advance Auto's nationwide practice of failing to provide sufficient break time and a functional place, shielded from view and free from intrusion, which may be used by an employee to express breast milk. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, reasonable attorneys' fees, litigation costs, and pre- and post-judgment interest.

14. Plaintiff brings this claim on behalf of herself and similarly situated former and current non-executive employees of Advance Auto who were expressing breastmilk at any time from December 29, 2022, to the resolution of this action and who, upon request, were denied

---

[10] https://wvutoday.wvu.edu/stories/2023/09/07/new-dedicated-lactation-room-opens-to-the-public-at-milan-puskar-stadium (last accessed October 12, 2023).

[11] https://www.qsrmagazine.com/outside-insights/ask-restaurant-legal-professionals-how-accommodate-pregnant-and-breastfeeding (last accessed October 12, 2023).

reasonable break times to express milk or denied a private, functional space to express breast milk and who elect to opt-in to this action (the "FLSA Collective").

15. The members of the FLSA Collective are victims of Advance Auto's practice of refusing to provide sufficient break times or "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk," as required by 29 U.S.C. § 218d.

16. Advance Auto has intentionally, willfully, and repeatedly harmed Plaintiff and the FLSA Collective by refusing to provide accommodations that they know they are obligated to provide under the PUMP Act.

17. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the lawsuit. Those similarly situated employees are known to Advance Auto, are identifiable, and can be located through Advance Auto's records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to § 216(b) of the FLSA.

## II. PARTIES

18. Plaintiff Kara Haynes is an employee of Advance Auto who worked as a Commercial Parts Pro in an Advance Auto located at 381 Donald E. Thurmond Parkway in Cleveland, Georgia (Store No. 7119). Ms. Haynes is an individual resident of Clermont, Georgia, and a citizen of Georgia. During all relevant times, Ms. Haynes was the mother of an infant that she breastfed and continued to breastfeed while she was working for Advance Auto. Pursuant to § 216(b), she has consented in writing to be a party to this action. Her executed Consent to Join form is attached hereto.

19. The members of the FLSA Collective, including Ms. Haynes, are or have been employed by Advance Auto at some point during the period December 29, 2022 to the present and have requested lactation accommodation. Upon information and belief, Advance Auto's practices and policies, or lack thereof, have impacted members of the FLSA Collective in the same or a similar manner across Advance Auto's locations.

20. Defendant Advance Auto is the leading automotive aftermarket parts provider in North America that serves professional and "do-it-yourself" customers. Operating at least 4,440 stores located in 48 U.S. states as of December 31, 2022, Advance Auto sells parts and batteries, assorted chemicals, and engine maintenance products, and provides certain free-of-charge services to its customers. Approximately 82% of its workforce is employed in store-level operations and roughly 22% of its workforce is female.[12]

21. Upon information and belief, Advance Auto has a centralized policy-making system whereby policies, practices, and guidelines, including with respect to lactation accommodations, are created and disseminated to the various locations from the headquarters in Raleigh, North Carolina.

22. Defendant Advance Auto is an "employer" within the meaning of the FLSA pursuant to 29 U.S.C. §§ 203(a), (d) and was an "employer" of Ms. Haynes at all times relevant hereto.

## III. <u>JURISDICTION AND VENUE</u>

23. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

---

[12] *See* Advance Auto 2021 ESG Report, *People*. Available at: https://online.flippingbook.com/view/1010704663/35/ (last accessed October 12, 2023).

24. This Court has personal jurisdiction over Advance Auto because it is located in this District, transacts business in this District, employs people in this District, and has significant contacts with this District.

25. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendant Advance Auto is headquartered in this District. Further, a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and it is subject to personal jurisdiction here.

## IV. BACKGROUND

### *A. The Benefits of Breastfeeding*

26. There are significant and proven benefits to breastfeeding children. Breast milk is widely accepted as the optimal source of nutrition for infants, and it provides numerous protections against illnesses and diseases for infants and mothers alike.[13]

27. Babies who are breastfed generally have better immune system development and functioning because breastmilk contains antibodies that serve to protect developing immune systems from disease.[14] As a result, babies who are breastfed tend to have fewer and less severe instances of certain short-term illnesses, including bacterial meningitis, diarrhea, ear infections,

---

[13] Am. Acad. of Pediatrics. *Technical Report: Breastfeeding and the Use of Human Milk*. Pediatrics. 2022;150 (1): e2022057988. Available at: https://publications.aap.org/pediatrics/article/150/1/e2022057989/188348/Technical-Report-Breastfeeding-and-the-Use-of?searchresult=1 (last accessed October 12, 2023).

[14] *See* Spitzmeuller, C., Wange, Z., Zhang, J., Thomas, C.L., Fisher, G.G., Matthews, R.A., and Strathearn, L. (2016). *Got milk? Workplace factors related to breastfeeding among working mothers*, Journal of Organizational Behavior, J. Organiz. Behav. 37, 692–718; Grummer-Strawn, L.M. and Rollins, N. (2015), Summarising the health effects of breastfeeding. Acta Paediatr, 104: 1-2. https://doi.org/10.1111/apa.13136 (last accessed October 12, 2023).

respiratory infections, urinary tract infections, and certain chronic illnesses, including diabetes, lymphoma, leukemia, hypercholesterolemia, and asthma.[15]

28. A paper published in 2015, analyzing dozens of studies, found that breastfeeding is associated with a lower risk of childhood obesity. The paper states that breastfeeding was associated with a significantly reduced risk of obesity in children.[16]

29. Several studies have found that breastfeeding is associated with a lower risk of sudden infant death syndrome ("SIDS"). These studies show that babies who were breastfed for the first few months of life had a lower risk of SIDS than babies who were not breastfed.[17]

30. The World Health Organization recommends that infants be exclusively breastfed for the first six months of life, meaning they should receive no other food or drink, not even water.[18]

31. Although breastfeeding initiation and duration have consistently improved, one study revealed that 60% of women do not meet their breastfeeding goals.[19]

---

[15] *See Guide for Establishing a Federal Nursing Mother's Program*, *supra*, n. 4, at 6–7.

[16] Horta, B.L., Loret de Mola, C. and Victora, C.G., *Long-term consequences of breastfeeding on cholesterol, obesity, systolic blood pressure and type 2 diabetes: a systematic review and meta-analysis*. Acta Paediatr, (2015) 104: 30-37; *see also* Yan J., Liu L., Zhu Y., Huang G., Wang P.P., *The association between breastfeeding and childhood obesity: a meta-analysis.* BMC Public Health. 2014, available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4301835/ (last accessed October 12, 2023).

[17] Meek, J. Y., Noble, L. *Technical Report: Breastfeeding and the Use of Human Milk.* Pediatrics July 2022; 150 (1): e2022057989, at 7. Available at: https://publications.aap.org/pediatrics/article/150/1/e2022057989/188348/Technical-Report-Breastfeeding-and-the-Use-of?searchresult=1?autologincheck=redirected (last accessed October 12, 2023).

[18] *World Health Organization's (WHO) Global Strategy for Infant and Young Child Feeding*, at 7–8. Available at: https://www.who.int/publications/i/item/9241562218 (last accessed October 12, 2023).

[19] Odom E. C., Li R., Scanlon K. S., Perrine C. G., Grummer-Strawn L., *Reasons for earlier than desired cessation of breastfeeding*. Pediatrics (2013); 131:e726–e732, e729.

32. Society also benefits from breastfeeding. One study showed that if 90% of women in the United States breastfed exclusively for six months, it would save the country $13 billion and prevent 911 preventable infant deaths per year.[20]

33. As discussed, the benefits of breastfeeding are significant, but there are also drawbacks to not breastfeeding. Parents who do not breastfeed suffer heightened health risks "including breast and ovarian cancers, heart disease, postpartum depression, diabetes, and rheumatoid arthritis."[21]

### *B. Proper Workplace Accommodations for Pumping Are Critical*

34. Not having a secure space for nursing mothers can increase anxiety and feelings of being overwhelmed, which can have a negative impact on the mother's mental, physical, and emotional health. Nursing mothers who do not have adequate workplace support are at an increased risk of early weaning, illness, and job loss. Therefore, it is critical for workplaces to provide support for nursing mothers.

35. In 2011, the U.S. Surgeon General released a Call to Action to Support Breastfeeding and noted that for employed mothers, "returning to work is a significant barrier to breastfeeding" because nursing mothers often face inflexibility and, among other things, lack a

---

[20] Morris, L., Lee, J., Williams, J., *Exposed: Discrimination Against Breastfeeding Workers*. WorkLife Law, at 7. Available at: https://worklifelaw.org/publication/exposed-discrimination-against-breastfeeding-workers/ (last accessed on October 12, 2023), citing Bartick, M. L., & Reinhold, J. *The economic burden of suboptimal breastfeeding in the United States: a systematic review*. Pediatrics (2010); 126(3), e756–e768.

[21] *See Exposed: Discrimination Against Breastfeeding Workers*, *supra* note 20, at 7, citing Am. Acad. of Pediatrics, Policy Statement, *Breastfeeding and the Use of Human Milk*, 129 PEDIATRICS e827, 32 (2012).

private place to express milk.[22] The Call to Action found that when mothers "do not have a place to breastfeed or express breast milk, they may resort to using the restroom for these purposes, an approach that is unhygienic and associated with premature weaning."[23]

36. A study based on data from 2011 to 2013, after the Pumping at Work Act was enacted in 2010, found that workplace accommodations are a significant predictor of breastfeeding duration.[24] The study found that nearly 50% of women reported that their postpartum employment plans affected breastfeeding-related decisions.[25] About a third of women indicated that employment posed a challenge to breastfeeding, and only 45% of women had access to a private space to pump milk.[26]

37. A clean and secure lactation space is necessary for a mother to be able to pump milk comfortably and efficiently.[27] Without a clean, secure space, nursing mothers can experience anxiety and stress, which can negatively impact the mother's milk supply.

38. The more a mother gets to pump her breast milk, the longer her milk supply/production lasts and the more breast milk the baby gets. Continuous pumping increases the

---

[22] *The Surgeon General's Call to Action to Support Breastfeeding, Barriers to Breastfeeding in the United States*, Office of the Surgeon General (US); 2011. Available at https://www.ncbi.nlm.nih.gov/books/NBK52682/ (last accessed October 12, 2023).

[23] *Id.*

[24] Kozhimannil, K. B., Jou, J., Gjerdingen, D. K., and McGovern, P. M., *Access to workplace accommodations to support breastfeeding after passage of the Affordable Care Act*, Women's Health Issues. 2016; 26(1): 6–13.

[25] *Id.*, at 8.

[26] *Id.*

[27] *See* Whitley M.D., Ro A., Choi B. *Workplace breastfeeding support and job satisfaction among working mothers in the United States*. Am J Ind Med. 2019; 62(8):716–726, 717. Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8423352/ (last accessed October 12, 2023).

chances of a longer supply of breastmilk.[28] Conversely, being unable to express milk when needed can result in a decrease in the individual's milk supply, forcing an earlier-than-recommended weaning of the child.[29]

39. When a mother's milk empties, there are neurological signals that release a hormone called prolactin, which triggers milk production. Limiting the amount a mother can pump decreases the amount of emptying and therefore decreases milk production.

40. Limiting the amount a person can pump can also lead to mastitis, an inflammation of the breast tissue that may involve infection, abscess, pain, fever, and illness.[30] Another study found that mastitis is associated with an increased risk of premature weaning.[31] Even if women do not develop mastitis or other complications from engorgement, pumping while already engorged can cause nipple trauma and bruising. Additionally, inadequate pumping can reduce a mother's milk supply, and it can take much longer to bring the supply back up.[32]

41. Moreover, a recent systematic review of studies on maternal mental health and breastfeeding showed that mothers who were not able to achieve their breastfeeding goals had negative mental health outcomes and put them at greater risk for depression, anxiety, and other

---

[28] *See* Bai Y., Wunderlich S.M. *Lactation accommodation in the workplace and duration of exclusive breastfeeding*. J Midwifery Womens Health. 2013; 58(6): 690–96, 697 and 695.

[29] Barriers to Breastfeeding in the United States, *Surgeon General's Call to Action to Support Breastfeeding*, *Barriers to Breastfeeding in the United States*, Office of the Surgeon General (US); 2011. Available at https://www.ncbi.nlm.nih.gov/books/NBK52688/ (last accessed September 22, 2023).

[30] *Exposed: Discrimination Against Breastfeeding Workers*, *supra* note 20 at 7, citing Lisa Amir. & The Academy of Breastfeeding Medicine Protocol Committee, ABM Clinical Protocol #4: Mastitis, Breastfeeding Medicine, 9 (5), 239 (Revised March 2014).

[31] *See The Surgeon General's Call to Action to Support Breastfeeding, supra* n. 24.

[32] *Id.*

mental health conditions.[33] Having proper workplace accommodations, like a clean and secure place to pump milk, can help nursing mothers achieve their breastfeeding goals and minimize the risk of maternal mental health problems, such as depression and anxiety. Nursing mothers who had access to supportive workplace accommodations can feel more confident and supported in the breastfeeding experience, which can play an important role in maternal mental health.[34]

### *C. Employers Must Do More to Protect Breastfeeding Employees*

42. Failing to provide adequate lactation accommodations remains a prevalent issue and can often force nursing mothers to stop breastfeeding or leave the workplace altogether.

43. A report published in 2016 by the Center for WorkLife Law at the UC Hastings College of the Law found that cases where an employer denied accommodations to or discriminated against an employee because she was breastfeeding or needed to express milk during the workday increased 800% between 2005 and 2016.[35]

44. According to a report released in 2019, which tracked 70 cases involving allegations of breastfeeding discrimination and retaliation that have written opinions issued between 2008 and April 2018, 63% of employees ended up losing their job (43% were fired and 20% resigned).[36]

---

[33] Yuen M., Hall O.J., Masters G.A., Nephew B.C., Carr C., Leung K., Griffen A., McIntyre L., Byatt N., Moore Simas T.A. *The Effects of Breastfeeding on Maternal Mental Health: A Systematic Review*. J Womens Health (Larchmt). 31(6): 787–807, available at: https://pubmed.ncbi.nlm.nih.gov/35442804/ (last accessed October 12, 2023).

[34] *See The Surgeon General's Call to Action to Support Breastfeeding*, *supra* n. 24.

[35] Calvert, C. T., *Caregivers in the Workplace: FRD Update 2016*. Center for WorkLife Law at the UC Hastings College of the Law, at 17. Available at: https://worklifelaw.org/publications/Caregivers-in-the-Workplace-FRD-update-2016.pdf (last accessed October 12, 2023).

[36] *Exposed: Discrimination Against Breastfeeding Workers, supra* note 20, at 13.

45. The women facing job loss for lack of lactation accommodation spanned from a taqueria cashier in California to a doctor in Georgia and a lawyer in New York.[37]

46. For example, in 2019, Simone Teagle filed a lawsuit against the City of New York for the discrimination she experienced as a breastfeeding mother.[38] Teagle said that for nearly six months, she was forced to pump in a breakroom, a bathroom, the locker room, or her vehicle.[39] As a result, she "lost a lot of her milk supply."[40] The suit is still pending.

***D. The Law Before the PUMP Act***

47. Despite this wide consensus in favor of pumping, and Congress having passed the Pumping at Work Act in 2010, for the past 12 years, a common problem faced by all nursing mothers who were not provided with sufficient lactation accommodation was the weak enforcement mechanism under the Pumping at Work Act. With limited remedies available, many of the claims in these cases based on violations of the Pumping at Work Act were dismissed.

48. Under § 207(r) of the Pumping at Work Act, the only remedies available were for unpaid minimum wages or overtime compensation. However, because employers are not required to pay employees who take breaks to pump, it was virtually impossible to hold accountable employers who failed to provide accommodations. As one court noted, with regards to the

---

[37] *Id.* citing *Dep't of Fair Employment & Hous. v. Acosta Tacos*, No. E200708 T-0097-00se, 2009 CAFEHC LEXIS 2, at *8–10 (Cal. Fair Employment & Hous. Comm'n June 16, 2009); *Wexler v. Kennesaw Pediatrics, P.C.*, No. 16-cv-1491, 2017 U.S. Dist. LEXIS 111037, at *2–3 (N.D. Ga. July 17, 2017); *Kim v. Goldberg*, 862 F. Supp. 2d 311, 315 (S.D.N.Y. 2012).

[38] *See Teagle et al. v. The City of New York et* al., No. 19-cv-7211 (E.D.N.Y); *see also* H.R. 3110, 117th Cong. (1st Sess. 2021), at 16.

[39] *See NYPD Cop Sues City for $5 Million Amid Claims She Was Harassed for Pumping Breast Milk*, (October 18, 2018). Available at: https://news.yahoo.com/nypd-cop-sues-city-5-155315818.html (last accessed October 12, 2023).

[40] *Exposed: Discrimination Against Breastfeeding Workers, supra* note 20, at 12.

Pumping at Work Act, "there does not appear to be a manner of enforcing the express breast milk provisions."[41]

49. In one of a handful of cases in which the court permitted a § 207(r) claim to proceed, a postpartum bank teller was told she had to express milk in the bathroom. When she objected on the basis that the bathroom was unsanitary, she was eventually forced to leave work in the middle of the day to go home and pump.[42] She sued her employer, and the court only permitted the suit to proceed because it found the plaintiff had alleged 40.35 hours of lost wages. The case was settled in 2017.

50. In another case, the court only permitted a furniture salesperson's § 207(r) claim to proceed because she alleged that she had to leave the sales floor and pump in her car, which resulted in her losing sales commissions to other salespeople.[43]

51. The Department of Labor similarly acknowledged the weak enforcement mechanism when it issued a notice stating that "[b]ecause employers are not required to compensate employees for break time to express breast milk, in most circumstances there will not be any unpaid minimum wage or overtime compensation associated with the failure to provide such breaks."[44]

52. Without a proper enforcement mechanism, employers like Advance Auto were permitted to, and did, freely violate the Pumping at Work Act with little fear of consequence.

---

[41] *Salz v. Casey's Marketing Co.*, No. 11-cv-3055, 2012 U.S. Dist. LEXIS 100399, at *7 (N.D. Iowa July 19, 2012).

[42] *See Lico v. TD Bank*, No. 14-cv-4729, 2015 U.S. Dist. LEXIS 70978 (E.D.N.Y., 2015).

[43] *See Poague v. Huntsville Wholesale Furniture*, 369 F. Sup. 3d 1180, 1199 (N.D. Ala. 2019).

[44] *Reasonable Break Time for Nursing Mothers*, 75 Fed. Reg. 80073, 80078.

53. Ensuring that working mothers have the time and space to express breastmilk is not a partisan issue. Around the time that the PUMP Act was passed, politicians from across the political spectrum expressed support for strengthening protections for lactating mothers in the workplace.

54. In a statement issued on March 8, 2021, in recognition of International Women's Day, President Biden said: "We must ensure that women can access affordable, high-quality health care throughout their lives, including maternal health care and the ability to breastfeed."[45]

55. Thereafter, in October 2021, Congresswomen Jaime Herrera Beutler, a Republican Congresswoman from Washington, expressed her support for the PUMP Act stating:

> Making sure moms can pump at work promotes healthier families, and it's also important to help businesses recruit and retain the workforces they need. That's why I'm pleased the House approved this business-friendly, bipartisan legislation … that simply provides moms with reasonable opportunities to pump in their workplace. I'm proud to have worked with businesses, health care stakeholders, and parents in successfully leading this legislation that supports moms in Southwest Washington who are providing for their family's health and financial security.[46]

56. On September 27, 2021, the White House issued a statement strongly supporting the PUMP Act, stating that: "No new mother should face unfair treatment in the workplace because their employer refuses to provide them with [a] . . . private, clean space needed to adequately express breast milk while at work, forcing them to choose between their health and the health of

---

[45] https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/08/statement-by-president-biden-on-international-womens-day/ (last accessed October 12, 2023).

[46] https://adams.house.gov/media-center/press-releases/adams-maloney-congressional-maternity-care-caucus-black-maternal-0 (last accessed October 12, 2023).

her child, and earning a paycheck. Yet millions of new working mothers, disproportionately working mothers of color, face this challenge every day."[47]

57. Prior to the vote on the PUMP Act, Republican Senator Lisa Murkowski stated: "With this bill, parents will be empowered to make their own choices on breastfeeding, and businesses can improve retention of valuable employees. It's a win-win-win . . . What has been a question is a women's protection at the jobsite to pump safely. If a mother chooses to breastfeed her baby, she deserves the legal protection to do so without having to worry about it impacting her career."[48]

58. Numerous organizations outside of government also expressed strong support for the PUMP Act. For example, in a news release published on October 22, 2021, on the U.S. Breastfeeding Committee's website, Vania Leveille, Senior Legislative Counsel for the ACLU, said: "Employers in every industry should have policies in place to accommodate the needs of pregnant and breastfeeding employees but, unfortunately, that is not currently the case. Instead, too many workers are penalized, discriminated against, terminated, or left without options when they try to pump breast milk at work."[49]

59. On the other hand, organizations that represent businesses also saw the value in passing the PUMP Act. The National Retail Federation's Senior Vice President for Government Relations told the Members of the House in a letter dated October 12, 2021, that "[t]he PUMP Act

---

[47] https://www.whitehouse.gov/wp-content/uploads/2021/09/H.R.-3110-SAP.pdf (last accessed October 12, 2023).

[48] https://www.newsweek.com/full-list-senators-who-voted-against-breastfeeding-workers-protections-1769450 (last accessed October 12, 2023).

[49] https://www.usbreastfeeding.org/usbc-news--blogs/pump-for-nursing-mothers-act-passes-with-bipartisan-support-in-us-house-of-representatives (last accessed October 12, 2023).

is a sound piece of bipartisan legislation that will allow nursing mothers to maintain their vital role the American workplace."[50]

60. Similarly, in a letter sent to all the Members of Congress, Neil L. Bradley, Chief Policy Officer at the U.S. Chamber of Commerce, stated: "The PUMP Act is a win-win for nursing mothers and the businesses that employ them. Employers would get clarity and a way to avoid litigation, and nursing mothers would be able to remain in the workforce. The Chamber is pleased to strongly support this legislation."[51]

61. Indeed, private industry also recognizes and supports the increasing need to protect and accommodate nursing mothers. There is a growing industry for the sale of "portable lactation pods," which are specially designed private spaces available to be used in various public and private venues to support breastfeeding mothers.[52] These pods are intended to address the need for access to adequate space for breastfeeding, away from public spaces or unhygienic restrooms. The growing presence of these lactation pods in the United States highlights a societal effort to recognize the importance of well-being of both new mothers and infants.

### ***E. The PUMP Act***

62. Given the acknowledged problems with the Pumping at Work Act, in late 2022, Congress passed the PUMP Act with strong bi-partisan majorities in both houses. In the House of

---

[50] Letter from David French to the Honorable Nancy Pelosi (Oct. 12, 2021) *available at* http://d22f3d5c92fe72fd8ca1-d54e62f2f7fc3e2ff1881e7f0cef284e.r22.cf1.rackcdn.com/2021%20Hill%20Letters/NRF%20Support%20Letter%20-%20PUMP%20Act%20-%20October%2012%202021.pdf (last accessed October 12, 2023).

[51] *U.S. Chamber Letter on the PUMP Act* (Dec. 20, 2022) *available at* https://www.uschamber.com/employment-law/u-s-chamber-letter-on-the-pump-act (last accessed October 12, 2023).

[52] For example: Mamava Inc., BrighterBooth, Nessel, and Panel Built Inc. all market and sell portable, free-standing, and/or prefabricated lactation spaces.

Representatives, it passed with a 276-member majority,[53] and in the Senate, it passed with a near-unanimous vote of 92 to 5.[54]

63. On December 29, 2022, the President signed an omnibus spending bill (P.L. 117-58), which included the PUMP Act.

64. According to both the House bill (H.R. 3110)[55] and the relevant Senate Amendment (S. Amdt. 6595),[56] the purpose of the PUMP Act was "[t]o amend the [FLSA] to expand access to breastfeeding accommodations in the workplace, and for other purposes."

65. Specifically, the PUMP Act amended the FLSA to include § 218d, which provides that:

> (a) An employer shall provide —
>
> ''(1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk; and
>
> ''(2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 218d.

66. Notably, the statute states that the "employer ***shall*** . . . provide a place…" for nursing parents to express milk. (Emphasis added.) The word "shall" in § 218d imposes an

[53] https://clerk.house.gov/Votes/2021331?BillNum=3110 (last accessed October 12, 2023).

[54] https://www.senate.gov/legislative/LIS/roll_call_votes/vote1172/vote_117_2_00417.htm (last accessed October 12, 2023).

[55] https://www.congress.gov/bill/117th-congress/house-bill/3110/text (last accessed October 12, 2023).

[56] https://www.congress.gov/amendment/117th-congress/senate-amendment/6595 (last accessed October 12, 2023).

affirmative duty on the employer to provide a clean, secure space because, as Congress found, "[a] private space to express breast milk is critical for nursing employees."[57]

67. Importantly, the PUMP Act also strengthened the relief available by inserting specific language in § 216(b) (one of the enforcement sections of the FLSA) stating that:

> Any employer who violates the provisions of section 15(a)(3) ***or 18D of this Act*** [29 USCS § 215(a)(3) or 218d] ***shall be liable for such legal or equitable relief as may be appropriate*** to effectuate the purposes of section 15(a)(3) or 18D [29 USCS § 215(a)(3) ***or 218d***], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) (emphasis added, which reflects the amendments to § 216(b)).

68. Congress intended this addition to correct for the lack of enforcement provided for in the Pumping at Work Act. According to the legislative intent behind the PUMP Act, one of the purposes was to provide additional forms of relief:

> …recovery only for unpaid minimum wages or overtime compensation renders employees unable to enforce current break time and space requirements in a private right of action…even if unpaid minimum wage or overtime compensation were recoverable, lost wages are often an inadequate or inappropriate form of relief… H.R. 3110 would allow workers to seek legal ***and equitable relief***… Allowing for legal and equitable relief under H.R. 3110 will also ***allow nursing employees to recover for harm to their physical and mental health***…***including for medical costs or emotional distress, and punitive damages for this type of harm***.[58]

***F. Guidance from the Department of Labor***

69. On May 17, 2023, The U.S. Department of Labor Wage and Hour Division ("WHD") published Field Assistance Bulletin No. 2023-02 (the "FAB"), which provides guidance

---

[57] H.R. 3110, 117th Cong. (1st Sess. 2021), at 10.

[58] H.R. 3110, 117th Cong. (1st Sess. 2021), at 16 (emphasis added).

to agency officials responsible for enforcing the PUMP Act.[59] The FAB provides insight into how the WHD will enforce employees' rights under the PUMP Act.

70. Regarding an employee's right to breaks to pump breast milk, the FAB emphasizes that employees are entitled to a "reasonable break ***each time*** such employee has need to pump breast milk at work for one year after the child's birth. An employer may not deny a covered employee a needed break to pump."[60]

71. Regarding the space requirements, employers must provide a "functional space" that is "(1) shielded from view; (2) free from intrusion from coworkers and the public; (3) available each time it is needed by the employee; ***and*** (4) not a bathroom."[61]

72. The FAB states: The location ***must be functional as a space for pumping***.[62] It must have a place for the nursing employee to sit, a flat surface (other than the floor), and employees must be able to store milk while at work.[63]

73. Further, an employer who violates a nursing mother's right to reasonable break times and a functional space to pump breast milk is liable "for appropriate legal or equitable remedies . . . . [which] may include ***compensatory damages and make-whole relief***, such as economic losses that resulted from violations, ***and punitive damages*** where appropriate. These remedies are available regardless of whether the employee has also experienced retaliation."[64]

---

[59] U.S. Department of Labor, Wage and Hour Division, Field Assistance Bulletin No. 2023-02. Available at: https://www.dol.gov/sites/dolgov/files/WHD/fab/2023-2.pdf (last accessed October 12, 2023).

[60] *Id.* at 2 (emphasis in original).

[61] *Id.* at 4 (emphasis in original).

[62] *Id.* (emphasis added).

[63] *Id.*

[64] *Id.* at 7 (emphasis added).

74. An employee may file a private cause of action seeking appropriate remedies, and there is "***no waiting time***" for an employee bringing a private suit "to enforce the reasonable break time requirement."[65]

75. Finally, employers are required to "post and keep posted a notice explaining the FLSA [and PUMP Act provisions] in conspicuous places in every establishment where such employees are employed."[66]

76. On September 18, 2023, the Department of Labor's Wage and Hour Division found "supervisors employed by Aimbridge Employee Service Corp. — operating as Hammock Beach Golf Resort and Spa — failed to provide a private place for a worker to express milk for her newborn baby, in violation of" the PUMP Act.[67] The agency found that it took supervisors nearly four months to provide an employee with a suitable space to pump milk, and even then the space — a manager's office — lacked privacy as the employee learned "when another worker entered the room while the mother was attempting to pump milk."

77. Division Director, Wildalí De Jesús, stated: Employers who fail to provide break time and a private place as the law requires are creating a barrier for women to balance their career and a child's needs once they return to work after having a child."[68] "There are long term benefits to breast feeding both for families and employers. Mothers who breast feed generally take less time off work due to childhood illnesses," added De Jesús.

---

[65] *Id.* at 8 (emphasis in original).

[66] *Id.*

[67] *U.S. Department of Labor Finds Palm Coast Resort Operator Denied Employee Private Space to Express Milk for Newborn, As Federal Law Requires*. Available at: https://www.dol.gov/newsroom/releases/whd/whd20230918 (last accessed September 22, 2023).

[68] *Id.*

78. Plaintiff seeks this Court's assistance on behalf of all nursing mothers who work and their infant children to improve breastfeeding outcomes by making clear that employers cannot deny their employees adequate lactation accommodation in the workplace.

## V. DEFENDANT DENIES PLAINTIFF HER RIGHTS TO ACCOMMODATION

79. Plaintiff Haynes began working for Advance Auto in November 2021 as a Commercial Parts Pro at Advance Auto Store 8182 at 1645 Peachtree Parkway in Cumming, Georgia and then at store 8037 located at 7341 Spout Springs Road in Flowery Branch, Georgia.

80. In April 2023, Ms. Haynes gave birth to her child. She took a few months off work and returned to work in July 2023. However, when Ms. Haynes returned, Advance Auto did not accommodate her request to pump breast milk at work.

81. When Ms. Haynes returned, she spoke with the branch manager at the time, Ricky Johnson. Johnson communicated to Ms. Haynes she needed to work while pumping and that there was no physical space that would be made available to her to pump and she could only take breaks when there were other employees to cover for her. There are generally limited staff and often Ms. Haynes works with only one other person, which makes it difficult for her to get a break and pump.

82. When Ms. Haynes could take a break, she would go to the bathroom, attach her milk pump, and return to the floor and pump while she worked at her desk in the back, or even while she was assisting customers. She continued pumping like this for several weeks until Mr. Johnson was fired for unrelated reasons and the district manager, Kenneth Fowler, became the supervisor of the store.

83. Ms. Haynes informed Mr. Fowler about the lack of pumping accommodations, and he instructed her to speak with the HR manager, Kelcey Terrell. Ms. Terrell advised Ms. Haynes to file an "accommodation request" to get pumping accommodations, which Ms. Haynes

immediately submitted in early August 2023. At the end of August, Ms. Haynes reached out to Ms. Terrell for a status update on the accommodation request and Ms. Terrell emailed Kira Gurevich, another Advance Auto employee, on September 1, 2023, asking her if she could "help with the request."

84. On September 8, 2023, Sonia Cardona, a Leave of Absence Case Manager for Advance Auto, emailed Ms. Haynes asking her to complete the "Request for Lactation Accommodation" form and return is within 14 days, so that "we can begin discussions [] with you and your leadership team to make sure your accommodation needs are met upon your return to work (regardless if you have already returned to work)." Ms. Haynes returned the form three business days later. The following week, not having heard anything back, Ms. Haynes asked Ms. Cardona for an update. On September 21, 2023, after weeks of Advance Auto failing to make any accommodation, Ms. Haynes called Ms. Cardona and explained that she had still not received a response regarding pumping accommodation at work. Ms. Cardona told Ms. Haynes that the request was being processed.

85. Ten days later, on October 2, 2023, Advanced Auto hung a curtain around a small chair and table and made this space available to Ms. Haynes in the back room of the store.

86. Ms. Haynes still does not receive scheduled breaks to pump.

87. Advance Auto's decision to ignore Ms. Haynes' requests and its failure to provide Ms. Haynes with pumping accommodation impacted her physically and mentally. She experienced a significant reduction in her milk supply, which has caused her great distress. Ms. Haynes also felt dehumanized and humiliated because she had to pump while serving customers. She felt embarrassed each time she had to help a customer while wearing a breast pump.

88. Advance Auto did not provide Ms. Haynes with sufficient break times "each time" she needed to pump. Indeed, there were days that Ms. Haynes did not get to take any breaks at all to pump. Ms. Haynes' supervisors refused to act or set up processes to ensure Ms. Haynes was receiving the accommodation to which she is entitled. For example, Advance Auto could have re-arranged staffing for the limited time while Ms. Haynes was pumping to make sure there was adequate coverage to allow Ms. Haynes to take pumping breaks, but it chose not to. Nor did those supervisors provide Ms. Haynes with a "functional space" to express breast milk. In all these ways, Advance Auto violated the PUMP Act with regard to Ms. Haynes.

89. Under the PUMP Act, Advance Auto had an obligation to provide Ms. Haynes with a space within 10 days of her request and failed to do so.

90. Thus, Advance Auto, acting through supervisors and managers, and on information and belief pursuant to organization-wide policies (or lack thereof), did not provide Ms. Haynes with sufficient break times "each time" she needed to pump. Nor did it provide her with a functional, sanitary, and private space despite her repeated requests. Advance Auto's acts violated the PUMP Act.

91. In accordance with 29 C.F.R. § 516.4, Advance Auto should have alerted nursing employees like Ms. Haynes of her rights to sufficient lactation accommodation by posting information in conspicuous locations at Advance Auto locations across the country. Upon information and belief, Advance Auto did not make such information available and failed to ensure that employees were aware of their rights to take reasonable breaks and to have a secure place to pump.

92. As Plaintiff's experience shows, in practice, Advance Auto does not have proper procedures or processes to timely provide accommodations for nursing mothers. Advance Auto

does not have a specific practice or a policy guiding its supervisors and managers to address requests for secure, private, functional spaces for nursing employees at its locations across the country. Its failure to timely provide accommodations for nursing mothers is a violation of the law. The FLSA requires employers to provide reasonable accommodations for nursing mothers, such as break times and a private place to pump breast milk. Advance Auto's refusal to do so denies nursing mothers their legal rights, makes it difficult for them to continue working while breastfeeding, and has impacted them mentally and physically.

93. Advance Auto's failure to provide Ms. Haynes and other similarly situated employees with reasonable breaks and a secure space, shielded from view, to express milk, caused her anxiety and uncertainty about her ability to continue breastfeeding. Returning to work after having a baby and continuing to pump during working hours requires mothers to have stamina and persistence. It requires upkeep of fluids and nutrition to ensure a continuous flow of milk production. Sufficient time and a functional space are necessary because to begin the flow of milk, mothers must be in a relaxed and rested state, not stressed and anxious while pumping in the bathroom or in their personal vehicles in the public parking lots, in plain view. The stress and anxiety of breastfeeding while being seen by the public or colleagues, and fear of not adequate having enough time to pump until empty, can jeopardize the flow of milk and may result in mothers not being able to express as quickly as someone who is relaxed and certain that they will not be intruded upon.[69]

94. Ms. Haynes was damaged in that she experienced emotional distress and anxiety.

---

[69] *See* H.R. 3110, 117th Cong. (1st Sess. 2021), at 10 ("Breastfeeding mothers must feel safe in order to let down breast milk, and a reasonable guarantee of privacy is a key part of that safety. If a nursing mother feels unsafe or emotionally distressed, her production of oxytocin may be inhibited, which can create a physiological barrier to lactation." (citation omitted)).

## VI. COLLECTIVE ACTION ALLEGATIONS

95. The "FLSA Collective" consists of all persons who have been or currently are employed by Advance Auto across the country who (1) were or are lactating (e.g., individuals who express breast milk) from December 29, 2022, to the resolution of this action, (2) were or are non-executive employees of Advance Auto, and (3) were or are not provided with a sanitary "functional space," upon request, that is (a) free from intrusion, (b) shielded from view, (c) available each time it is needed, and (d) not a bathroom; OR were denied a break to pump breast milk while at work in the year following the birth of the child.

96. As of December 31, 2022, Advance Auto had over 4,915 locations across 48 states and employed over 67,000 full-time and part-time employees. There are numerous similarly situated employees who are working or worked for Advance Auto and are or were unlawfully denied their rights under the PUMP Act.

97. The number of affected employees can be ascertained by Advance Auto based on its payroll and personnel records. Collective members may be informed of the pendency of this collective action by direct mail and/or publication at the various Advance Auto locations throughout the country.

98. This action is properly maintained as a collective action under 29 U.S.C. § 216(b) because all class members are similarly situated. The affected individuals were and continue to be female employees of Advance Auto who: (1) required accommodations for lactation at work from December 29, 2022, to the present; (2) work or worked as non-executive employees for Advance Auto that were subject to the same timekeeping and break policies; and (3) informed their supervisor or manager that they needed lactation accommodations at work.

99. Advance Auto states that the average store size is 7,800 square feet. Accordingly, Advance Auto could have provided their employees with a functional space that is shielded from view, free from intrusion, available when needed, and not a bathroom.

100. As discussed above, companies such as Advance Auto can accommodate nursing employees by purchasing portable spaces, additional examples of which are shown below. These portable lactation pods are available at a variety of different prices and sizes and can be stored off-site. They are marketed to provide a secure, sanitary space with a flat surface to comfortably accommodate all nursing mothers. This is a widely available and simple solution for Advance Auto to accommodate its lactating employees.





101. Advance Auto could also have accommodated its nursing employees by providing them with access to clean offices or rooms and by installing locks on the doors to ensure they were secure. However, Advance Auto chose not to do so.

102. Furthermore, Advance Auto failed to provide its nursing employees with breaks each time they needed to pump. Advance Auto's refusal to accommodate employees to allow them break time to pump is a clear violation of the PUMP Act and the rights of nursing mothers.

103. Advance Auto's willful policies and practices denied and continue to deny members of the FLSA Collective their rights under the PUMP Act. Advance Auto's actions were willful because the PUMP Act received substantial publicity at the time of its passage and

thereafter. The legal obligation to provide nursing employees with reasonable breaks and secure spaces has been in effect since 2010. Advance Auto has career employment attorneys and an in-house legal team whose job requires staying up to date with recent laws and regulations and their potential impact on Advance Auto's operations. Therefore, Advance Auto knew or should have known about its obligation to provide lactation accommodations to its employees. Once Plaintiff informed her employers about the lack of accommodation, Advance Auto had notice of its non-compliance and, by failing to act for months, willfully refused to provide sufficient accommodation.

104. Advance Auto claims that it "encourage[s] [its] team members to 'Speak Up'" and be "Champion[s] [for] Inclusion."[70] However, refusing to provide lactation accommodations to nursing employees who repeatedly request it and forcing them to continue working while they pump falls far short of creating an environment for employees to speak up, and instead results in the unlawful denial of employees' rights under the PUMP Act.

**<u>FIRST COUNT</u>**

**Violation of the FLSA and PUMP Act**
**[29 U.S.C. § 218d(a)(1)]**
**(Brought on Behalf of Plaintiff and the FLSA Collective)**

105. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

106. Plaintiff and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

---

[70] *See* Advance Auto, Annual Report, Year ending December 31, 2022, at 4. Available at: https://d18rn0p25nwr6d.cloudfront.net/CIK-0001158449/6780feaa-349c-4c35-9fac-5e2b95dfc979.pdf (last accessed October 2, 2023).

107. The FLSA, at 29 U.S.C. § 218d(a)(1), states that an "employer shall provide: (1) a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk . . . ."

108. In violation of the PUMP Act, Advance Auto, throughout the relevant period, failed to provide reasonable break times for employees "to express breast milk for 1 year after the child's birth each time such employee needed to express milk. . . ." 29 U.S.C. § 218d(a)(2).

109. Advance Auto, through supervisors and management employees, failed to provide reasonable break times for Plaintiff and similarly situated employees to express breast milk in violation of the FLSA.

110. On information and belief, Advance Auto, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing to provide reasonable breaks to express breast milk to Plaintiff and those similarly situated in violation of the PUMP Act.

111. Plaintiff will request that the Court authorize notice to all current and former employees of Advance Auto who required a space to pump milk from December 29, 2022, to the date the notice is sent to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

112. Advance Auto violated Plaintiff's and the FLSA Collective's rights under the PUMP Act by failing to provide reasonable break times to express breast milk.

113. Advance Auto violated Plaintiff's and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

114. Advance Auto is liable to Plaintiff and the FLSA Collective for legal and equitable relief in the form of damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

## <u>SECOND COUNT</u>

**Violation of the FLSA and PUMP Act**
**[29 U.S.C. § 218d(a)(2)]**
**(Brought on Behalf of Plaintiff and the FLSA Collective)**

115. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

116. Plaintiff and the FLSA Collective are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

117. The FLSA, at 29 U.S.C. § 218d(a)(2), states that an "employer shall provide: . . . (2) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

118. In violation of the PUMP Act, Advance Auto, throughout the relevant period, failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 218d(a)(2).

119. Despite requests from nursing employees, Advance Auto, through supervisors and management employees, failed to provide a "functional," non-bathroom space within which Plaintiff and similarly situated employees could express breast milk without the worry of being intruded upon, in violation of the FLSA.

120. On information and belief, Advance Auto, through supervisors and management employees, knowingly, willfully, and systematically engaged in this unlawful practice of refusing

to provide sufficient lactation support to Plaintiff and those similarly situated, in violation of the PUMP Act.

121. Plaintiff will request that the Court authorize notice to all current and former employees of Advance Auto who required and requested a space to pump milk from December 29, 2022, to the date the notice is sent to inform them of the pendency of this action and their right to "opt in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking damages, attorneys' fees, litigation costs, declaratory and injunctive relief, and all other relief available.

122. Advance Auto violated Plaintiff's and the FLSA Collective's rights under the PUMP Act by failing to provide an appropriate clean and safe place that is free from intrusion within which to pump breast milk.

123. Advance Auto violated Plaintiff's and the FLSA Collective's rights by failing to institute policies and practices that comply with the PUMP Act.

124. Advance Auto is liable to Plaintiff and the FLSA Collective for legal and equitable relief in the form of damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses. *See* 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff prays for the following relief on behalf of herself and the FLSA Collective:

A. An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B. An Order from this Court ordering Advance Auto to post a copy of an agreed-upon and court-approved notice in a common space visible to employees at each Advance Auto location across the country;

C. An Order from this Court ordering Advance Auto to provide the undersigned with the names, addresses, email addresses, and telephone numbers of all female employees who, from January 1, 2022, to the present, have taken leave from work under the Family Medical Leave Act;

D. An Order from this Court ordering Advance Auto to send, via email, a copy of the agreed-upon and court-approved notice to all female employees who, from January 1, 2022, to the present, have taken leave from work under the Family Medical Leave Act;

E. Adjudicating and declaring that Advance Auto's conduct as set forth herein and above is in violation of the FLSA;

F. Adjudicating and declaring that Advance Auto violated the FLSA by failing to provide reasonable break time and private, sanitary, non-bathroom lactation spaces for nursing mothers;

G. Declaratory and injunctive relief as necessary and appropriate, including enjoining Advance Auto from further violations of the FLSA;

H. Awarding Plaintiff and the FLSA Collective legal and equitable damages in an amount consistent with the FLSA;

I. Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Advance Auto, in accordance with the FLSA;

J. Awarding pre-and post-judgment interest and court costs as further allowed by law;

K. Granting Plaintiff and the FLSA Collective leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and

L. Awarding any further legal or equitable relief the Court deems just, equitable, and/or appropriate.

**SIRI & GLIMSTAD LLP**

/s/ *Dana Smith*

Dana Smith (NC Bar No. 51015)
525 North Tryon Street
Suite 1600, #7433
Charlotte, North Carolina 28202
Tel: (980) 448-1299
Fax: (646) 417-5967
Lisa R. Considine (Notice of Special
Appearance to be filed)

Oren Faircloth (Notice of Special
Appearance to be filed)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: dsmith@sirillp.com
E: lconsidine@sirillp.com
E: ofaircloth@sirillp.com

*Attorneys for Plaintiff and the FLSA Collective*